IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

NAHID ZAHIROVIC,

                              Plaintiff,

        vs.                                        Civil Action No.
                                                   6:06-CV-981 (NAM/DEP)

MICHAEL J. ASTRUE, Commissioner
of Social Security,[1]

                              Defendant.

_____

APPEARANCES:                         OF COUNSEL:

FOR PLAINTIFF:

ANTONOWICZ LAW FIRM          PETER W. ANTONOWICZ, ESQ.
1300 Floyd Avenue
Rome, NY 13440-4600

FOR DEFENDANT:

HON. ANDREW T. BAXTER
Acting United States Attorney for the
Northern District of New York
P.O. Box 7198
100 S. Clinton Street
Syracuse, NY 13261-7198

_____

        [1]     Plaintiff's complaint, which was filed on August 14, 2006, named Jo Anne
B. Barnhart, the former Commissioner of Social Security, as the defendant.  On
February 12, 2007, Michael J. Astrue took office as Social Security Commissioner.  He
has therefore been substituted as the named defendant in this matter pursuant to Rule
25(d)(1) of the Federal Rules of Civil Procedure, and no further action is required in
order to effectuate this change.  *See* 42 U.S.C. § 405(g).

OFFICE OF GENERAL COUNSEL      BARBARA L. SPIVAK, ESQ.
Social Security Administration        Chief Counsel, Region II
26 Federal Plaza
New York, NY 10278             KIMBERLY L. SCHIRO, ESQ.
                                 Assistant Regional Counsel

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

## REPORT AND RECOMMENDATION

Plaintiff Nahid Zahirovic, who suffers from a degenerative disc condition which causes him lumbar back and leg pain, has commenced this proceeding pursuant to 42 U.S.C. § 405(g) seeking judicial review of the Commissioner's denial of plaintiff's claims for disability insurance benefits ("DIB") and supplemental security income ("SSI") payments under the Social Security Act.  In his appeal, plaintiff asserts that the lynchpin determination of the administrative law judge ("ALJ") assigned by the agency to hear and determine the matter, to the effect that he was not disabled at the relevant times, is not supported by substantial evidence in the record and overlooks both contrary opinions of his treating physician and his statements concerning the limitations which he experiences as a result of his conditions.  Zahirovic, who the record discloses is less than proficient in speaking and understanding English, further maintains that the ALJ improperly failed to provide him with an interpreter, and that this

2

oversight took on added significance in light of the need for the ALJ to assess his credibility.

Having carefully reviewed the record of evidence and proceedings before the agency, considered in the light of plaintiff's arguments, and applying the requisite deferential review standard, I find that the ALJ failed to properly consider the opinions of plaintiff's treating physician, and to make a function-by-function analysis of plaintiff's limitations, and further conclude that the ALJ failed to properly explain his rejection of plaintiff's subjective complaints of debilitating pain.  Accordingly, I am unable to conclude that the underlying determination resulted from the application of proper legal principles, and is supported by substantial evidence.

I.   <u>BACKGROUND</u>

Plaintiff was born in 1967; at the time of the administrative hearing in this matter, he was thirty-eight years old.[2]  AT 47, 231.  Plaintiff is married, has an eleven year old son, and lives with his family in a house in Utica, New York.  AT 49, 236.  Plaintiff is a high school graduate, and in 1996 received a college degree in the field of civil engineering.  AT 59, 239.

---

[2]      Portions of the administrative transcript (Dkt. No. 5), which was compiled by the Commissioner and is comprised in large part of the medical records and other evidence which was before the agency when its decision was made, will be cited hereinafter as "AT ___."

Plaintiff last worked on November 6, 2002.  AT 55, 240.  Prior to that time Zahirovic was employed for approximately eight years in various settings, including as an assembler, civil technician, factory worker, quality control inspector, postal clerk and handler.  AT 55, 64, 240-41, 244-51.

On November 6, 2002, while lifting concrete cylinders and loading them onto a truck during the course of his employment, plaintiff injured his lower back.  AT 114, 241.  That injury followed an earlier incident when on January 20, 2000, while working for a different employer, plaintiff injured himself requiring emergency room treatment, with a resulting diagnosis of acute lumbar spasm.  AT 115; *see also* AT 54-55.

The first report of any treatment for plaintiff's back condition, following the November, 2002 injury, is from September of 2003, some ten months later, when plaintiff sought treatment from Dr. Gregory Shankman, an orthopedist.[3]  AT 105.  Dr. Shankman reported that plaintiff had limited flexion, reflexes were symmetric, he had good sensation to light touch and pin prick, there was good strength in muscle groups, he could ambulate with a heel to toe gait bearing weight evenly on both extremities, plaintiff exhibited no motor weakness, straight leg raising was negative bilaterally,

---

[3]     Although plaintiff may have been examined prior to September 2003, there are no medical records pertaining to treatment during that intervening period.

and he had no point tenderness or other palpable abnormalities.  *Id.*
Similar findings were recorded by Dr. Shankman as a result of periodic
examinations occurring throughout 2005.[4]  *See* AT 105-13, 137.  During
the course of his treatment of the plaintiff, Dr. Shankman prescribed
various medications, including Skelaxin and Ultracet, ordered a magnetic
resonance imaging ("MRI") testing, and recommended a course of
physical therapy.  AT 105-06.  Results of the prescribed MRI testing,
conducted in June of 2004, revealed a small central protrusion type L4-5
and L5-S1 disc herniations that were superimposed on a somewhat
narrowed spinal canal congenitally.  AT 142.  The MRI results further
showed that there was an impression on the ventral thecal sac at L4-5
and contact at L5-S1, but with no mass effect on the exiting nerve roots.
*Id.*  In September 2003, Dr. Shankman noted that plaintiff was partially
disabled but still working, although he was subsequently laid off sometime
prior to December 11, 2003.  AT 105, 108.

In March 2004, plaintiff presented for an independent orthopedic
evaluation in connection with his workers' compensation claim.  *See* AT
114-16, 241.  In a report of that examination, Dr. Kenneth Ortega noted

---

[4]     In May of 2005, Dr. Shankman found for the first time that plaintiff had
positive straight leg raising on the right side.  AT 160.

that motor strength was "5/5", deep tendon reflexes were symmetrical, straight leg raising was negative, plaintiff experienced pain and discomfort in the mid-lumbar area and upon flexion and bending, heel and toe walking was intact, and that plaintiff could climb onto the exam table and dress and undress himself without assistance.  AT 115.  Dr. Ortega also remarked that previous x-rays taken showed disc space narrowing at the L5-S1 level, diagnosing the plaintiff as suffering from low back pain secondary to presumed L5-S1 lumbar disc disease and opining that plaintiff was moderately disabled.[5]  *Id.*

In June of 2004, plaintiff began treatment with Dr. James M. Cimo, of the Slocum-Dickson Medical Group, P.L.L.C. in New Hartford, New York.  AT 118-22.  Based upon his initial examination, Dr. Cimo found no atrophy, weakness, or focal deficits, and prescribed Bextra and Vicodin. AT 119-20.  In August 2004 plaintiff was again seen by Dr. Cimo, who found that plaintiff exhibited a normal range of motion and strength, apart from a tender LS spine.  AT 122.

---

[5]        It should be noted that disability standards under the Act differ significantly from those applicable under various state's Workers' Compensation Laws. *Crowe v. Comm'r of Soc. Sec.*, No. 01-CV-1579, 2004 WL 1689758, at *3 (N.D.N.Y. July 20, 2004) (Sharpe, J.) (citing *Gray v. Chater*, 903 F. Supp. 293, 301 n.8 (N.D.N.Y. 1995) ("Workers' compensation determinators are directed to the workers' prior employment and measure the ability to perform that employment rather than using the definition of disability in the Social Security Act.")).

Plaintiff continued his treatment with both Dr. Shankman and Dr. Cimo through the remainder of 2004, and into the following year.  Based upon an examination conducted on September 21, 2004 Dr. Shankman discussed with Zahirovic various options, including both surgery and a conservative course of treatment; the latter course was pursued, with a recommendation that plaintiff begin physical therapy and take Bextra to control inflammation.[6]  AT 113.  Plaintiff was again seen by Dr. Shankman in January of 2005, who at that time noted that electromiargraphy ("EMG") performed by Dr. Thayer reflected L5-S1 nerve distribution with a damaged nerve.  AT 137, 143-57.  In June of 2005, both Dr. Shankman and Dr. Cimo reported their opinions that plaintiff could not work "until further notice."  AT 178, 189.

## II.    PROCEEDINGS BEFORE THE AGENCY

Plaintiff filed applications for DIB and SSI benefits on September 1, 2004, asserting a disability onset date of November 6, 2002.  AT 47-51. Following the denial of those applications, AT 24-30, a hearing was conducted, at plaintiff's request, on March 25, 2005 by ALJ Gordon Mahley to address plaintiff's claim for benefits.  *See* AT 231-66.  ALJ

---

[6]    Plaintiff began treating with Dr. Douglas Thayer, a chiropractor, during that month.  *See* AT 123, 139-41, 184.

Mahley later issued a written decision, dated June 4, 2005, upholding the agency's denial of plaintiff's request for DIB and SSI benefits.  AT 18-23.

Based upon his *de novo* review of the record, and applying the now-familiar, five pronged sequential test for determining disability, ALJ Mahley concluded at step one that plaintiff had not engaged in substantial gainful activity since his alleged disability onset date.  AT 22.  At steps two and three of the disability algorithm, the ALJ concluded that plaintiff's degenerative disc disease of the lumbar spine was an impairment of sufficient severity to significantly restrict his ability to perform basic work activities, AT 22, but that it did not meet or equal any of the listed, presumptively disabling impairments set forth in the governing regulations, 20 C.F.R. Pt. 404, Subpt. P, App. 1.[7]  AT 22.

Before proceeding to step four of the sequential analysis, ALJ Mahley determined that despite the limitations imposed by his medical condition, plaintiff retains the residual functional capacity ("RFC") to perform "work at the 'light' exertional level."  AT 21.  In making that determination, ALJ Mahley relied upon medical evidence in the record, including reports generated by treating and evaluating physicians, and

---

[7]      In his quest for judicial reversal of the Commissioner's determination, plaintiff does not challenge this portion by the ALJ's decision.

rejected plaintiff's subjective testimony, to the extent that it was

inconsistent with that finding, as not fully credible.  AT 22.  Applying his

RFC finding, ALJ Mahley determined that plaintiff is unable to perform his

past relevant work but, in reliance upon the medical-vocational guidelines

(the "grid") set forth in the governing regulations, 20 C.F.R. Pt. 404, Subpt.

P, App. 2 as a framework for determining the existence of available work

which the plaintiff is capable of performing, concluded that a finding of "not

disabled" was nonetheless directed.  AT 22-23.  ALJ Mahley thus held that

plaintiff was not entitled to receive DIB and SSI benefits under the Act.  AT

23.  ALJ Mahley's opinion became a final determination of the agency on

June 30, 2006, when the Social Security Administration Appeals Council

denied his request for review of that decision.  AT 6-11.

    B.    <u>This Action</u>

    Plaintiff commenced this action on August 14, 2006.  Dkt. No. 1.

Issue was thereafter joined on December 1, 2006 by the Commissioner's

filing of an answer, accompanied by an administrative transcript of the

proceedings and evidence before the agency.  Dkt. Nos. 5, 6.  With the

filing of plaintiff's brief on February 6, 2007, Dkt. No. 9, and that on behalf

of the Commissioner on March 29, 2007, Dkt. No. 10, the matter is now

ripe for determination and has been referred to me for the issuance of a

report and recommendation, pursuant to 28 U.S.C. § 636(1)(B) and

Northern District of New York Local Rule 72.3(d).[8]  *See also* Fed. R. Civ.

P. 72(b).

III.    DISCUSSION

    A.    Scope of Review

    A court's review under 42 U.S.C. § 405(g) of a final decision by the

Commissioner is limited; that review requires a determination of whether

the correct legal standards were applied, and whether the decision is

supported by substantial evidence.  *Veino v. Barnhart,* 312 F.3d 578, 586

(2d Cir. 2002); *Shaw v. Chater,* 221 F.3d 126, 131 (2d Cir. 2000); *Schaal

v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998); *Martone v. Apfel*, 70 F. Supp.

2d 145, 148 (N.D.N.Y. 1999) (Hurd, J.) (citing *Johnson v. Bowen,* 817

F.2d 983, 985 (2d Cir. 1987)).   Where there is reasonable doubt as to

whether the Commissioner applied the proper legal standards, his

decision should not be affirmed even though the ultimate conclusion

---

        [8]      This matter has been treated in accordance with the procedures set forth
in General Order No. 18 (formerly, General Order No. 43) which was issued by the
Hon. Ralph W. Smith, Jr., Chief United States Magistrate Judge, on January 28, 1998,
and subsequently amended and reissued by Chief District Judge Frederick J. Scullin,
Jr., on September 12, 2003.  Under that General Order an action such as this is
considered procedurally, once issue has been joined, as if cross-motions for judgment
on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil
Procedure.

reached is arguably supported by substantial evidence. *Martone*, 70 F.

Supp. 2d at 148.  If, however, the correct legal standards have been

applied and the ALJ's findings are supported by substantial evidence,

those findings are conclusive, and the decision should withstand judicial

scrutiny regardless of whether the reviewing court might have reached a

contrary result if acting as the trier of fact.  *Veino*, 312 F.3d at 586;

*Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); *Barnett v. Apfel*, 13

F. Supp. 2d 312, 314 (N.D.N.Y. 1998) (Hurd, M.J.); *see also* 42 U.S.C. §

405(g).

   The term "substantial evidence" has been defined as "'such relevant

evidence as a reasonable mind might accept as adequate to support a

conclusion.'"  *Richardson v. Perales,* 402 U.S. 389, 401, 91 S. Ct. 1420,

1427 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197,

229, 59 S. Ct. 206, 216-17 (1938)); *Jasinski v. Barnhart*, 341 F.3d 182,

184 (2d Cir. 2003).  To be substantial, there must be "'more than a mere

scintilla'" of evidence scattered throughout the administrative record.

*Richardson*, 402 U.S. at 401, 91 S. Ct. at 1427; *Martone*, 70 F. Supp. 2d

at 148 (quoting *Richardson*).  "To determine on appeal whether an ALJ's

findings are supported by substantial evidence, a reviewing court

considers the whole record, examining the evidence from both sides,

11

because an analysis of the substantiality of the evidence must also

include that which detracts from its weight." *Williams*, 859 F.2d at 258

(citing *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 488, 715 S. Ct.

456, 464 (1951).

When a reviewing court concludes that incorrect legal standards

have been applied, and/or that substantial evidence does not support the

agency's determination, the agency's decision should be reversed.  42

U.S.C. § 405(g); *see Martone*, 70 F. Supp. 2d at 148.  In such a case the

court may remand the matter to the Commissioner under sentence four of

42 U.S.C. § 405(g), particularly if deemed necessary to allow the ALJ to

develop a full and fair record or to explain his or her reasoning.  *Martone*,

70 F. Supp. 2d at 148 (citing *Parker v. Harris,* 626 F.2d 225, 235 (2d Cir.

1980)).  A remand pursuant to sentence six of section 405(g) is warranted

if new, non-cumulative evidence proffered to the district court should be

considered at the agency level.  *See Lisa v. Sec'y of Dep't of Health and*

*Human Servs. of U.S.*, 940 F.2d 40, 43 (2d Cir. 1991).  Reversal without

remand, while unusual, is appropriate when there is "persuasive proof of

disability" in the record and it would serve no useful purpose to remand

the matter for further proceedings before the agency.  *Parker*, 626 F.2d at

235; *Simmons v. United States R.R. Ret. Bd.*, 982 F.2d 49, 57 (2d Cir.

1992); *Carroll v. Sec'y of Health and Human Servs.,* 705 F.2d 638, 644

(2d Cir. 1983).

      B.    Disability Determination - The Five Step Evaluation Process

      The Social Security Act defines "disability" to include the "inability to

engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to

result in death or which has lasted or can be expected to last for a

continuous period of not less than 12 months . . . "  42 U.S.C. §

423(d)(1)(A).   In addition, the Act requires that a claimant's

> physical or mental impairment or impairments
> [must be] of such severity that he is not only
> unable to do his previous work but cannot,
> considering his age, education, and work
> experience, engage in any other kind of substantial
> gainful work which exists in the national economy,
> regardless of whether such work exists in the
> immediate area in which he lives, or whether a
> specific job vacancy exists for him, or whether he
> would be hired if he applied for work.

*Id.* § 423(d)(2)(A).

      The agency has prescribed a five step evaluative process to be

employed in determining whether an individual is disabled.  *See* 20 C.F.R.

§§ 404.1520, 416.920.  The first step requires a determination of whether

the claimant is engaging in substantial gainful activity; if so, then the

claimant is not disabled, and the inquiry need proceed no further.  *Id.* §§
404.1520(b), 416.920(b).   If the claimant is not gainfully employed, then
the second step involves an examination of whether the claimant has a
severe impairment or combination of impairments which significantly
restricts his or her physical or mental ability to perform basic work
activities.  *Id.* §§ 404.1520(c), 416.920(c).  If the claimant is found to suffer
from such an impairment, the agency must next determine whether it
meets or equals an impairment listed in Appendix 1 of the regulations.  *Id.*
§§ 404.1520(d), 416.920(d); *see also id.* Part 404, Subpt. P, App. 1.  If so,
then the claimant is "presumptively disabled".  *Martone*, 70 F. Supp. 2d at
149 (citing *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984)); 20
C.F.R. §§ 404.1520(d), 416.920(d).

       If the claimant is not presumptively disabled, step four requires an
assessment of whether the claimant's residual functional capacity ("RFC")
precludes the performance of his or her past relevant work.  20 C.F.R. §§
404.1520(e), 416.920(e).  If it is determined that it does, then as a final
matter the agency must examine whether the claimant can do any other
work.  *Id.* §§ 404.1520(f), 416.920(f).

       The burden of showing that the claimant cannot perform past work
lies with the claimant.  *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996);

*Ferraris*, 728 F.2d at 584.  Once that burden has been met, however, it becomes incumbent upon the agency to prove that the claimant is capable of performing other work.  *Perez*, 77 F.3d at 46.  In deciding whether that burden has been met, the ALJ should consider the claimant's RFC, age, education, past work experience, and transferability of skills.  *Ferraris*, 728 F.2d at 585; *Martone*, 70 F. Supp. 2d at 150.

      C.      <u>The Evidence In This Case</u>

           1.     <u>RFC</u>

Pivotal to the ALJ's finding of no disability is the determination that despite plaintiff's condition, he nonetheless retains the RFC to perform a full range of light work.[9]  Plaintiff challenges that RFC finding, arguing that

---

[9]     By regulation light work is defined as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

it 1) results from improper rejection of opinions of his treating sources; 2) is not supported by substantial evidence; and 3) was not the product of a function-by-function analysis as required by the appropriate regulations.

A claimant's RFC represents a finding of the range of tasks he or she is capable of performing notwithstanding the impairments at issue. 20 C.F.R. §§ 404.1545(a), 416.945(a). An RFC determination is informed by consideration of a claimant's physical abilities, mental abilities, symptomology, including pain, and other limitations which could interfere with work activities on a regular and continuing basis. *Id.*; *Martone*, 70 F. Supp. 2d at 150.

To properly ascertain a claimant's RFC, an ALJ must therefore assess plaintiff's exertional capabilities, addressing his or her ability to sit, stand, walk, lift, carry, push and pull. 20 C.F.R. §§ 404.1545(b), 404.1569a, 416.945(b), 416.969a. Nonexertional limitations or impairments, including impairments which result in postural and manipulative limitations, must also be considered. 20 C.F.R. §§ 404.1545(b), 404.1569a, 416.945(b), 416.969a; *see also* 20 C.F.R. Part 404, Subpt. P, App. 2 § 200.00(e). When making an RFC determination,

---

20 C.F.R. §§ 404.1567(b), 416.967(b).

an ALJ must specify those functions which the claimant is capable of performing; conclusory statements concerning his or her capabilities, however, will not suffice. *Martone*, 70 F. Supp. 2d at 150 (citing *Ferraris,* 728 F.2d at 587). An administrative RFC finding can withstand judicial scrutiny only if there is substantial evidence in the record to support each requirement listed in the regulations. *Martone*, 70 F. Supp. 2d at 150 (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990) (McAvoy, J.)); *Sobolewski v. Apfel*, 985 F. Supp. 300, 309-10 (E.D.N.Y. 1997).

a)    <u>Rejection of Conflicting Evidence</u>

Subsumed within his challenge to the Commissioner's determination is plaintiff's contention that the ALJ improperly disregarded a report of plaintiff's treating orthopedic surgeon, Dr. Gregory Shankman, M.D., concerning his work related limitations, and afforded only "limited weight" to opinions of his treating chiropractor, Douglas Thayer, D.C. *See* Plaintiff's Brief (Dkt. No. 9) at 5-6.

In fairness to the ALJ it must initially be noted that both of the assessments provided by those treating sources were rendered after June 4, 2005, the date of ALJ Mahley's decision. *See* AT 192-95, 198-02. This is not to say, however, that those opinions are not entitled to a least some

17

consideration.  Both of those documents were provided to the agency prior
to completion of an internal review of ALJ Mahley's decision, and were
expressly incorporated into the record by the Social Security
Administration Appeals Council.  *See* AT 4-5.  The Social Security
regulations expressly authorize a claimant to submit new and material
evidence to the Appeals Council when requesting review of an ALJ's
decision.  20 C.F.R. §§ 404.970(b), 416.1470(b); *Perez v. Chater*, 77 F.3d
41, 43 (2d Cir. 1996).  Even when the Appeals Council declines to review
the ALJ's decision, any new evidence submitted by the claimant
nonetheless becomes part of the administrative record; the regulations
require the Appeals Council to "evaluate the entire record including the
new and material evidence submitted . . . [and] review the case if it finds
that the [ALJ's] action, findings, or conclusion is contrary to the weight of
the evidence currently of record."  20 C.F.R. §§ 404.970(b), 416.1470(b);
*Perez*, 77 F.3d at 45 (quoting § 404.970(b)).  Accordingly, when the
Appeals Council denies review after considering new evidence, the
Commissioner's final decision "necessarily includes the Appeals Council's
conclusion that the ALJ's findings remained correct despite the new
evidence."  *Perez*, 77 F.3d at 45 (citation and internal quotation marks
omitted).

These rules are not without their limitations, however.  To be properly considered, the post-hearing evidence must be new and material, and must relate to the period on or before the ALJ's decision.  *Perez*, 77 F.3d at 45.  Specifically, evidence is "new" if it is not merely cumulative of what is already in the record, and is "material" if it is both 1) relevant to the claimant's condition during the time period for which benefits have been denied – that is, the period on or before the ALJ's decision, and 2) probative – in other words, that there is a "reasonable probability that the new evidence would have influenced the Commissioner to decide the claimant's application differently."  *Webb v. Apfel*, No. 98-CV-791, 2000 WL 1269733, at *14 (W.D.N.Y. Feb. 8, 2000) (citing *Jones v. Sullivan*, 949 F.2d 57, 60 (2d Cir.1990)).

In this instance both of plaintiff's treating sources rendered opinions shortly after issuance of the ALJ's decision, noting limitations considerably more restrictive than those discerned by ALJ Mahley.[10]  In his post-hearing

---

[10]     In response to this argument the government meekly argues that the disputed assessments do not relate to the relevant time period.  *See* Defendant's Brief (Dkt. No. 10) at 8.  In light of the fact that the reports were prepared less than a month after the date of the ALJ's decision, and there is nothing in the record to indicate they were based on examinations of plaintiff's condition occurring after the date of the ALJ's decision or that there was marked deterioration of plaintiff's condition over the intervening days, I have discounted this argument, and find that both the assessments fairly relate to plaintiff's condition prior to the date of the ALJ's determination.  *See generally Perez*, 77 F.3d at 48; *see also Wagner v. Sec'y of Health and Human Servs.*, 906 F.2d 856, 861 (2d Cir. 1990) for the proposition that "[a] treating physician's

assessment, Dr. Shankman asserts that plaintiff is limited to lifting and

carrying only ten pounds; is capable of standing and/or walking up to two

hours in an eight hour work day; should be provided with the ability to

alternate between sitting and standing; and is the subject of significant

postural limitations.  AT 192-94.  As opinions of plaintiff's treating

physician, those observations are entitled to considerable deference.  *See*

*Veino*, 312 F.3d at 588; *Barnett*, 13 F. Supp. 2d at 316.

     The assessment of Dr. Thayer, plaintiff's chiropractor, rendered on

June 21, 2005, is even more limiting.  AT 190-201.  Dr. Thayer opines that

plaintiff is only capable of carrying less than ten pounds; can stand and/or

walk for up to two hours in a work day; is able to sit for less than six hours

on an eight hour work day; must be provided with ability to periodically

alternate between sitting and standing; and is somewhat limited in the

postural realm.  *Id.*  It is true that as a chiropractor, Dr. Thayer's opinions

are not strictly subject to the treating physician rule.  *Diaz v. Shalala*, 59

F.3d 307, 314 (2d Cir. 1995); *Toro v. Chater*, 937 F. Supp. 1083, 1091-92

(S.D.N.Y. 1996).  In order to be given controlling weight under the treating

physician rule, a treating source's opinion must be a "medical opinion."  20

retrospective medical assessment of a patient may be probative when based upon
clinically acceptable diagnostic techniques").

C.F.R. §§ 404.1527, 416.927; *Diaz*, 59 F.3d at 313; *Toro*, 937 F. Supp. at 1091-92. Under the regulations, however, a chiropractor is not an "acceptable medical source" qualified to give a medical opinion. *Diaz*, 59 F.3d at 313 (discussing 20 C.F.R. §§ 404.1513(a) and (e)); *Toro*, 937 F. Supp. at 1091-92. Since they cannot provide a medical diagnosis, opinions of chiropractors are not subject to the treating physician rule, and consequently there is no "hard and fast rule" governing the weight which an ALJ must give a chiropractor's opinion. *Diaz*, 59 F.3d at 313, 314 n. 8; *Toro*, 937 F. Supp. at 1091-92.

This is not to say that such evidence is meaningless. Indeed, the agency's regulations themselves provide that a chiropractor's opinion should be considered for the purpose of assisting the ALJ in understanding how a claimant's impairment affects his or her ability to work. *Chandler v. Callahan*, No. 96-CV-1790, 1998 WL 99384, at *5 (N.D.N.Y. Feb. 23, 1998) (Pooler, J. and DiBianco, M.J.) (citing 20 C.F.R. §§ 404.1513(e)(3), 416.913(e)(3)).

When weighed against the relative dearth of medical evidence to support the ALJ's RFC assessment, other than his personal observations of the plaintiff and the conclusions of a non-examining agency consultant, *see* AT 130-33, these contrary opinions of Dr. Shankman and Dr. Thayer

cast considerable doubt upon the defensability of the ALJ's RFC finding.

b)      Function-By-Function Analysis

ALJ Mahley's RFC assessment consists of a blanket statement to the effect that in his view plaintiff is capable of performing light work.  AT 21.  When making that observation, ALJ Mahley does not discuss the possibility of other limitations, and in particular fails to address plaintiff's ability to walk, sit and stand, as well as postural limitations, all of which could reasonably be expected to be present based upon the nature of plaintiff's medical condition.

In determining a claimant's RFC, an ALJ "must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 C.F.R. § 404.1545 and § 416.945.  Only then may the RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy."  S.S.R. 96-8p, 1996 WL 374184, at *1-2, *Titles II and XVI:  Assessing Residual Functional Capacity in Initial Claims* (S.S.A. 1996); *see also Mardukhayev v. Comm'r of Soc. Sec.*, No. 01-CV-1324, 2002 WL 603041, at *5 (E.D.N.Y. Mar. 29, 2002).  As provided in Social Security Ruling ("SSR") 96-8p,

22

> RFC may be expressed in terms of an exertional category, such as light, if it becomes necessary to assess whether an individual is able to do his or her past relevant work as it is generally performed in the national economy.  However, without the initial function-by-function assessment of the individual's physical and mental capacities, it may not be possible to determine whether the individual is able to do past relevant work as it is generally performed in the national economy because particular occupations may not require all of the exertional and nonexertional demands necessary to do the full range of work at a given exertional level.

S.S.R. 96-8p, 1996 WL 374184, at *3.

In this instance the ALJ's RFC analysis is plainly inadequate.  The naked statement that a claimant is capable of meeting the exertional demands of a particular work category, such as light work, while addressing certain components of a complete RFC analysis, does not absolve the ALJ from his or her duty to outline, on a function-by-function basis, a claimant's restrictions in his or her ability to perform work related activities and whether or not he or she has the capacity to work on a regular and continuing basis.  *See Brown v. Barnhart*, No. 01-CV-2962, 2002 WL 603044, at *5-7 (E.D.N.Y. Apr. 15, 2002).

It should further be noted that SSR 96-8P requires that an RFC assessment include a narrative discussion describing how the evidence

supports each conclusion, citing specific medical facts and non-medical evidence.  S.S.R. 96-8p, 1996 WL 374184, at *7.  Despite this requirement, in arriving at the RFC finding the ALJ failed to explain the evidence that supports his finding regarding plaintiff's RFC.  *See Viall v. Astrue*, 1:05-CV-527, 2008 U.S. Dist. LEXIS 8896, at *22-25 (N.D.N.Y. Feb. 5, 2008) (Kahn, J.) (remanding for failing to explain on what specific evidence the ALJ relied upon in making the RFC determination).

The failure of ALJ Mahley to perform the required function-by-function analysis and to explain the basis for his RFC determination warrants reversal of the Commissioner's decision and remand to the agency for further consideration.

c)     <u>Substantial Evidence</u>

Even in the absence of these significant shortcomings, ALJ Mahley's RFC findings would nonetheless be subject to challenge based upon the fact that they do not garner the support of substantial evidence in the record.  In the only RFC assessment before the ALJ, a non-examining state agency consultant opined on November 2, 2005 that while plaintiff is capable of lifting up to fifty pounds occasionally and twenty-five pounds frequently, he can only sit, stand and walk for approximately six hours in an eight hour work day, and only occasionally may fulfill certain postural

24

requirements.  AT 131-32.  While the exertional requirements of this RFC assessment support the ALJ's findings, his light work conclusion does not address the sit, stand and walk limitations, nor does it address the postural element of the assessment.

It should be noted that in addition to the state agency RFC assessment, the ALJ also had before him a note, dated June 22, 2004, from plaintiff's treating physician, Dr. Shankman, indicating that plaintiff was not to "work until further notice."  AT 189.  It is true that ALJ Mahley did address this statement in his decision, concluding that it was not supported by the evidence and properly noting that it represented a decision on a matter reserved to the Commissioner.  AT 20; *see Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999); 20 C.F.R. §§ 404.1527(e), 416.1527(e).  ALJ Mahley did not, however, expand upon his observation that Dr. Shankman's note was contrary to the medical evidence in the record.

In sum the ALJ's RFC determination, which was pivotal to his finding of no disability, lacks the support of substantial evidence in the record, is deficient in view of his failure to perform a function-by-function analysis of plaintiff's ability to perform work related functions, and is contrary to the opinions of two of plaintiff's treating sources.

2.    Plaintiff's Credibility

In arriving at his determination, ALJ Mahley noted that plaintiff's claims regarding his disabling symptomology were not fully credible based upon his conservative course of treatment, his demonstrated ability to sit during the hearing, and his representation to the New York State Department of Labor that he was actively engaged in a job search. Plaintiff contends that the ALJ's rejection of his disabling claims was not supported by substantial evidence.[11]

It is undeniably well within the discretion of the Commissioner to evaluate the credibility of a plaintiff's complaints and render an independent judgment in light of the medical findings and other evidence. *See Mimms v. Heckler*, 750 F.2d 180, 185-86 (2d Cir. 1984); Social Security Ruling ("SSR") 96-7p, 1996 WL 374186, *Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements* (S.S.A. 1996). "Since symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone," all information submitted by a claimant

---

[11]    Standing alone, the fact that when presented with available options plaintiff chose a conservative course of treatment does not alone constitute substantial evidence that he is not disabled. *Cf. Burgess v. Astrue*, 537 F. 3d 117, 130 (2d Cir. 2008). Such evidence can, however, lend support to a finding of no disability if augmented by other evidence of disability. *Id.*

26

concerning his or her symptoms must be considered.  20 C.F.R. §§

404.1529(c)(3), 416.929(c)(3).  The claimant's testimony alone carries

independent weight; to require a claimant to fully substantiate his or her

symptoms with "medical evidence would be both in abrogation of the

regulations and against their stated purpose."  *Matejka v. Barnhart*, 386 F.

Supp. 2d 198, 207 (W.D.N.Y. 2005) (citing *Castillo v. Apfel*, No. 98 CIV.

0792, 1999 WL 147748, at *7 (S.D.N.Y. Mar. 18, 1999)).

        The regulations prescribe a specific process that the ALJ is to follow

in weighing a claimant's testimony.  The ALJ must first establish that there

is a medically determinable impairment that could reasonably be expected

to produce the claimant's symptoms.  20 C.F.R. §§ 404.1529(b)

416.929(b).  If the ALJ finds such an impairment, the ALJ next evaluates

the intensity and persistence of the symptoms to determine how the

symptoms limit the claimant's functioning.  *Id.* §§ 404.1529(c), 416.929(c).

        A claimant's testimony is entitled to considerable weight when it is

consistent with and supported by objective clinical evidence demonstrating

that the claimant has a medical impairment which one could reasonably

anticipate would produce such symptoms.  *Barnett v. Apfel*, 13 F. Supp.

2d 312, 316 (N.D.N.Y. 1998) (Hurd, M.J.); *see also* 20 C.F.R. §§

404.1529(a), 416.929(a).  If the claimant's testimony concerning the

intensity, persistence, or functional limitations is not fully supported by

clinical evidence, the ALJ must consider additional factors, including: (1)

daily activities; (2) location, duration, frequency, and intensity of any

symptoms; (3) precipitating and aggregating factors; (4) type, dosage,

effectiveness, and side effects of any medications taken to relieve

symptoms; (5) other treatment received; and (6) any other measures

taken to relieve symptoms.  20 C.F.R. §§ 404.1529(c)(3)(i)-(vi),

416.929(c)(3)(i)-(vi).

    After considering plaintiff's subjective testimony, the objective

medical evidence, and any other factors deemed relevant, the ALJ may

accept or reject a claimant's subjective testimony.  *Martone,* 70 F. Supp.

2d at 151; *see also* 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4).  Although

the ALJ is free to accept or reject such testimony, a "finding that the

witness is not credible must nevertheless be set forth with sufficient

specificity to permit intelligible plenary review of the record."  *Williams*, 859

F.2d at 260-61 (citation omitted).  Where the ALJ's findings are supported

by substantial evidence, the decision to discount subjective testimony may

not be disturbed on court review.  42 U.S.C. §405(g); *Aponte v. Sec'y,*

*Dep't of Health & Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984).

    In this case, the ALJ erred on two fronts.  First, although the ALJ

28

found plaintiff's testimony was less than credible, he never specifically stated whether plaintiff's medical impairments "could reasonably be expected to produce the pain or other symptoms alleged[,]" as required. 20 C.F.R. §§ 404.1529(a), 416.929(a).  Additionally, the ALJ failed to discuss the majority of factors set forth in 20 C.F.R. §§ 404.1529(c)(3)(i)-(vi), 416.929(c)(3)(i)-(vi).  The ALJ did not consider, for example, plaintiff's daily activities; the medications taken; the location, duration, frequency, and intensity of any of his symptoms; any precipitating and aggregating factors; and measures taken to relieve the symptoms.  AT 21.  While the ALJ focused on the facts that plaintiff did not have surgery, could drive, sat through the hearing, and actively sought employment, that limited analysis did not fulfill his duty to consider all the factors delineated in the regulations. This, then provides yet another basis for reversal of the Commissioner's determination.

### 3.   Failure To Provide An Interpreter

Despite failing to request this accommodation at the time, having since lost on his claim for benefits plaintiff now argues the ALJ erred by failing to provide him with an interpreter during the hearing.  Specifically, plaintiff states that during the course of that proceeding, he was unable to effectively communicate in English, and that this hindered his right to a full

29

and fair hearing as well as a fair credibility determination.

Under the agency's policy regarding interpreters for individuals with limited English proficiency ("LEP")[12] or persons requiring language assistance, "the disability determination service (DDS) will provide an interpreter **free of charge,** to any individual requesting language assistance, or when it is evident that such assistance is necessary to ensure that the individual is not disadvantaged.  The **DDS will not require individuals needing language assistance to provide their own interpreters.**"  Social Security Online, POMS Section DI 23040.001, *available at*, https://secure.ssa.gov/apps10/poms.nsf/lnx/0423040001 (emphasis in original); *see also Di Paolo v. Barnhart*, No. 01-CV-3121, 2002 WL 257676, at *8-9 (E.D.N.Y. Feb. 8, 2002).

In determining whether a foreign language interpreter must be provided, a DDS staff member should 1) review "**information in the claims folder** (e.g., the Disability Transmittal Sheet (DI02 or DI16), the SSA-3368-BK, Report of Contact (SSA-5002), SSA-795, etc.), which states that an interpreter is needed[;]" 2) "[b]e alert to the language needs

---

[12]       "An individual with LEP is someone who has limited or no ability to read, write, speak or understand English."  Social Security Online, POMS Section DI 23040.001, *available at*, https://secure.ssa.gov/apps10/poms.nsf/lnx/0423040001.

of any individual having difficulty in understanding or speaking English and be sensitive to the cultural differences that could negatively affect the disability determination interview[;]" 3) ascertain if the individual preferred that the disability interview be "conducted in English and, if not, which language he/she prefers to use[;]" and 4) "[p]rovide an interpreter whenever it is difficult to understand the individual, or when it is evident that language assistance is required to ensure that the individual is not disadvantaged, even if the individual does not request an interpreter." Social Security Online, POMS Section DI 23040.001, *available at*, https://secure.ssa.gov/apps10/poms.nsf/lnx/0423040001 (emphasis in original).

In this case, the evidence in the record does not support plaintiff's claim for the need of interpretative assistance.  Plaintiff reported on his Social Security Disability Report that he could speak, understand, and read English, and that he could write more than his name in English.  AT 54.  On that form, Zahirovic also failed to indicate that he had another preferred language.  *Id.*  Moreover, an agency employee who interviewed Zahirovic noted that he appeared to be educated and spoke fluent English, and that he had no difficulty reading, understanding, talking, and answering in English.  AT 62.

31

A review of the record confirms that plaintiff was sufficiently able to communicate in English during the administrative hearing, despite his claims to the contrary.  AT 233-66.  While on occasion plaintiff stated he did not understand a question in those instances, the ALJ clarified and plaintiff properly answered the questions.  *Id.*  A review of the hearing transcript reveals that plaintiff's communication in English was effective.

Based upon substantial evidence in the record, I find that the unavailability of an interpreter at the hearing did not prejudice the plaintiff during the course of his administrative proceedings.  *See Xu v. Barnhart*, No. CV-0403927, 2006 WL 559263, at *5 (E.D.N.Y. Mar. 7, 2006); *Guglielmo v. Barnhart*, No. 01 Civ. 10033, 2003 WL 21749782, at *4 (S.D.N.Y. July 29, 2003); *Castillo v. Shalala*, No. 93 CIV. 7805, 1995 WL 598977, at *3 (S.D.N.Y. Oct. 10, 1995).  Accordingly, I decline to recommend a remand of this matter on this ground.

IV.   <u>SUMMARY AND RECOMMENDATION</u>

By all accounts, plaintiff suffers from a documented lower back condition that has caused him to experience significant chronic pain.  In light of this fact, the ALJ was dutibound to perform a function-by-function analysis of plaintiff's condition when determining his capacity to perform work related functions.  The ALJ both failed to fulfill this duty, and

32

additionally rendered a decision which is both unsupported by the record which was before him at the time and significantly undermined by subsequent reports rendered by two treating sources as well as plaintiff's subjective complaints of pain.  Under these circumstances I recommend that the Commissioner's determination be vacated, and the matter be remanded for further proceedings.[13]  It is therefore

RECOMMENDED that the plaintiff's motion for judgment on the pleadings be GRANTED, the Commissioner's finding of disability be VACATED, and the matter REMANDED to the agency for further consideration consistent with this recommendation.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of Court within ten (10) days.  FAILURE TO SO OBJECT

---

[13]      Although plaintiff seeks remand solely for the calculation of benefits, such a course of action is not appropriate in this case.  Reversal and remand for the calculation of benefits is only warranted "when there is 'persuasive proof of disability' [in the record] and further development of the record would not serve any purpose." *Steficek v. Barnhart*, 462 F. Supp. 2d 415, 418 (W.D.N.Y. 2006) (quoting *Rosa v. Callahan*, 168 F.3d 72,  83 (2d Cir. 1999)).  Remand for further consideration, on the other hand, is appropriate when the ALJ has applied an improper legal standard, or further findings and explanations would clarify the ALJ's decision.  *See Rosa v. Callahan,* 168 F.3d at 82-83; *Parker v. Harris,* 626 F.2d 225, 235 (2d Cir. 1980); *Steficek v. Barnhart*, 462 F. Supp. 2d at 418 (citing *Pratts v. Chater,* 94 F.3d 34, 39 (2d Cir. 1996)).  In this instance, remand is required for the purpose of making further findings and offering additional explanations of the evidence, and not because of a finding that there is persuasive proof of disability in the existing record.

TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW.  28 U.S.C. §

636(b)(1) (2006); Fed. R. Civ. P. 6(a), 6(e), 72; *Roldan v. Racette*, 984

F.2d 85 (2d Cir. 1993).

IT IS FURTHER ORDERED that the Clerk of the Court serve a copy

of this report and recommendation upon the parties in accordance with

this court's local rules.

David E. Peebles
U.S. Magistrate Judge

Dated:       September 15, 2008
             Syracuse, NY